Hemphill, Ch. J.
The question at issue is, whether that portion of the clause of the will which enjoins upon the legatee, Alexandra Gortario, the duty of leaving at his death whatever remained to him of the bequeathed inheritance to Maria de los Santos be valid and effectual to vest in her the property in controversy, or be contrary to the law existing at the death of the testator, and consequently null and void. It is contended that the bequest is a nullity, as being in contravention of the laws of Spain. Mexico, and of Coahuiia and' Texas, which prohibited entails, fiduciary bequests, and every species of similar incumbrance preventing the alienation of property or requiring it to be either preserved for or restored to another.
That the provisions of law upon which this controversy depends mas»- he understood, I will cite them at large from the decrees of the Cortes of Spain and of the Cougress of Mexico. The first article of the decree of tlie Cortes of the 27th September, 1820, is expressed in the following terms :
“Quedan suprimidos todos los mayorazgos, fideicomisos, patronatos, y cualquiera otra especie de vinculaciones de bienes raíces, muebles, semovientes, censos, juros, foros o de cualquiera otra naturaleza, los cuales de restituyen desde ahora a la clase de absolutamente libres.” (Colln, de Los Decretos de Cortes, vol. 5, p. 192.)
The translation of this article, as found in White’s Recopilación, (vol. 2, p. 181,) is as follows: -‘All primogenitures, trusts, rights of presentation, and every other description of entail on real property, movable or fixtures, rents, annuities, seigniories, or of any other kind whatever, are suppressed, which are from henceforward restored to the class of absolutely free.” In the Mexican edition of Febrero (see p. 3) it is said, that this law was not published in Mexico, hut, he that as it may, the, decree of the Mexican Congress of the 7th August, 1823, recognized its obligation,‘and in its first article, declared that any property which at any time had been entailed, (vinculados,) ceased to be so from the 27th September, 1820, in virtue of tlie law of that date, and should continue to be absolutely free; and that neither that nor any other property should ever in future be entailed (puedan volver a vincular.)
The second section of this decree is as follows:
“Han estado por tanto en la clase de libres los mayorazgos, cacicazgos, fide-icomisos, patronatos, o capellanías laicas, y cualquiera otra especie de'vincula-ciones de bienes raices, muebles, semovientes, censos, juros, foros o de cualquiera otra, naturaleza; debiendo por lo mismo arreglarse a la mencionada ley los casos ocurridos sobre la materia.”
¿The following is the translation of this article by Mr. .Schmidt, in his work on the Civil Law of Spain and Mexico : “ Hence are considered as Eree property mayorazgos^ fideicomisos, advowsons. and curacies in the gift of the laity, and all other kinds of entails, whether of real estate, animals, ground rent, per-petuities, emphiteutic rents, and all other property, whatever bo its nature, which must be governed bv the aforesaid law in all cases where it is applicable.”
*20 The 14th article of the law of the Cortes is to the effect that no person can in future establish a primogeniture, {mayorazgo,) fideicomiso, presentation, chaplainry, bequest for pious uses, or any entail whatsoever, on any class of property or rights, nor prohibit directly or indirectly their alienation. By the 14th article of the Mexican decree certain provisions of the law of the Cortes were repealed, but none which affect the question under consideration.
The decree 2STo. 203 of the laws of Coahnila and Texas recognizes the existence of the decree of the Spanish Cortes, and in effect deciares that it was published on the Gth March, 1821.
It was also urged for the appellant that if the ordinance of the consultation declaring “that the proceedings relative to successions, &c.. should be regulated agreeably to the laws and principles in similar eases in the State of Louisiana,” extended beyond the practice and procedure in Probate Courts and modified the power of testamentary dispositions, then the bequest to the defendant is invalid under the 1507th article of the Civil Code, which declares that “substitutions and fideicommissa are and remain prohibited, and that every disposition by which the donee, the heir or legatee, is charged to preserve for or return a thing to a third person is null, even with regard to the donee, the instituted heir or legatee.”
The 17th section of the “Declaration of Eights” in the Constitution of the Republic declares that perpetuities or monopolies are contrary to the genius of a free government, and shall not be allowed; nor shall the law of primogeniture or entaihnents ever be in force in the Republic. This article was not discussed in lho argument; but its true construction, with reference to questions of the character of the one in controversy, is of importance, and its effect may perhaps, before the close of the opinion, be somewhat considered.
If the bequest to the defendant, be embraced within any of the classes of entaihnents specifically enumerated, it. must be ranked under that of iha fidei-comiso; and to ascertain whether it has the features of a, fideicomiso, it will be necessary to determine the signification of the term and the extent of its application as employed in the decrees above cited.
In the translation of tire decree of the Cortes before cited the word is rendered “a trust.” In the Mexican edition of Sala, lib. 2, tit. 6, sec. 30, fidei-comiso is said, in one of the definitions of the author, to be an order, intimated to the heir by words of request, that he should give something to another. The same jurist lays it down that a fideicomiso may be universal, when it is of all the inheritance, which is then called fideicomisaria, or particular, when it is only of one thing. It may be made tacitly or expressly. It will be express, when the testator commands his heir that he restore to another the inheritance or a part of it; and tacit, when no mention is made of restitution, but some injunction is laid upon the heir from which this may be inferred, as, for example, “Let Peter be my heir, but with the condition that he do not make a will,” since this is equivalent to “I pray Peter that he may restore my inheritance to his nearest of kin,” (a sus parientes próximos.) This species of fideicomisos is very similar to “mayorazgos,” and is comprehended in the latest dispositions respecting enfailments (vinculaciones.)
Febrero, in the latest edition, (chapter 10, lib. 2, sec. 23,) defines a fideicom-isary substitution to be the establishment of an heir who is placed or made dependent on the fidelity of another, the inheritance being left in the hands of the latter that he may give it to the former. This substitution is oblique, because the true heir does not receive the inheritance directly and immediately, but by means of another intrusted with the charge of restoring it. It is called fideicomisaria, because it is based on the faith of some one person; and it is created in this form: “I appoint Peter my heir; and I beseech, request, or command him that ho may hold, for such a length of time, my inheritance which I leave him, and that afterwards he may give or deliver it to John.”
Murillo, in his work on Wills, (p. 49,) defines a fideicomisary substitu *21 tion to be where the testator charges the heir, whom he names, to restore or deliver to another his inheritance.
Domat, in his civil law, in tiie preliminary remarles to hook fifth, in treating of substitutions, after showing what was comprehended under vulgar substitution, defines the kind of substitution which makes the goods lo pass from one successor lo another to be that which was properly called fideicommissum — in the Roman law, a fiduciary bequest — by which the testator requested his executor to restore either tiie whole inheritance or some particular thing to the person whom he named. In book 4, preamble to tit. 2, a fiduciary bequest is described to be a disposition by which the testator prayed his heir or executor to deliver to some person either tiie whole succession or a part thereof, or something'in particular; and that at first it depended wholly on the heir or executor to comply with the request of the testator, and from hence came tiie Latin word fideicommissum, because it was committed or remitted to the faith and integrity of the heir or executor.
Chancellor Kent, in his lecture on Usos and Trusts, vol. 4. p. 2SS, states that uses existed in the Roman law under tiie name oifideicommissa, or trusts; that they were introduced by testators to evade the municipial law, which disabled certain persons, as strangers and exiles, from being heirs or legatees. The inheritance or legacy was given to a person competent to take in trust for the real object of the testator’s bounty. The commentator briefly narrates the history otfideicommissa, or trusts, from the time that they were but a precarious right, depending upon the conscience of the heir or legatee, until a proetor was appointed with special jurisdiction to enforce the execution of tiie trust; and tiie remedy against the trustee was rendered more efficacious by a decree of Justinian, requiring tiie heir or legatee, when the trust could not he otherwise proved, to disclose or deny tiie trust upon oatli; and if it appeared, to compel its performance. This history may be found much more at large in Cooper’s Justinian, lib. 2, tit. 23. In the second section of this title", the following is given as an example of a form of a fideicommissum: “ Let Lucius Titius be my heir; and I request you, Lucius Titius, that so soon as you enter upon my inheritance you would restore it to Caius Seins.” But it is said a testator may request his heir to restore a part of .tiie inheritance only, and may make him a trustee upon condition, or from a day certain. In tiie 9th section the Emperor declares that what we have said of an heir who is instituted to tiie wliolfe of an inheritance holds equally to him who is instituted only to a part. And in the 24th title it is declared that a man may also leave particular tilings in trust per fideicommissum, as afield, silver, clothes, or a certain sum of money, and may request his heir to restore them, or even a legatee. The cestui que trust, or the fideicommissary, may he also requested to give up to another the part or the whole of what he receives. (Sec. 11, lib. 2, tit. 23, Code Justinian.)
No definition of a fideicomiso is characterized by more accuracy and precision than that under which it is classified in article 1507 of the Civil Code of Louisiana, viz : a disposition by which tiie donee, heir, or legatee is charged to preserve for or return a tiling to a third person.
From these definitions it appears clear that the donation in question is a fideicomiso, and as such prohibited by tiie laws of Spain and Mexico in force at the death of the testator. Had the charge been to restore all of the inheritance to tiie defendant, it could not have been questioned that tiie disposition would liave constituted a fideicomiso. Does the charge to restore only what remains change the character of tiie disposition and relieve it from the nullity prescribed by the law? We are of opinion that this must he responded to in the negative. One of the essential features of a fideicomiso is that the property 'must be restored to another, and ttiis characterizes the bequest in this case.
Fideicomisos, in their origin, were pure simple trusts — the trustee taking for the mere purpose of conveying to another. (Kent Comm., vol. 4, p. 28S.) *22 They were subsequently applied to other purposes. The trustee or fiduciary heir had ail usufruct or a vested estate in the property, the extent and character of his interest or estate being dependent on the terms of the bequest. For example, under the will in this case, Alexander (tins fiduciary heir) had a vested estate, subject to be defeated by the happening; of the condition that tie did not dispose of it before his death, and by tiie further condition that he died leaving the defendant, who is th a fideicomisary heir, surviving.
The bequest in this ease, then, if it bo & fideicomiso, constitutes a fiideicom-isary substitution ; and one of the characteristics of this species of substitution, in contradistinction to that known as the vulgar substitution, is the establishment of a successive order of inheritance by which one heir succeeds to the inheritance after it has been enjoyed by another. (2 Pothier. 429.) Is not such the character of and such the enjoyment under the bequest in controversy? The defendant is not called to the inheritance in the event that Alexander dies before the testator, or that lie does not accept, but she is to receive, it or a part thereof after its enjoyment by the fiduciary heir. In general, fideicom-isary substitutions are distinguished by two characteristics: the one being a charge to preserve and the other a charge to restore the inheritance. Had the bequest in this case been that Alexander after his death shhuUi leave to the defendant all of the inheritance bequeathed to him under the will, then the bequest would have been characterized by both features. He would have had an estate in the property, but without the power of alienation; and this is what is meant by the charge to preserve. But the great characteristic of a bequest of this nature is the charge to restore, in conformity with tlic dispositions of the will, the whole or a part of the thing bequeathed. Iu fact the restoration according to the will of the donor is of the very nature and essence of a fideicomiso. In their origin this was their sole purpose, the property being received merely for the purpose of being convoyed to another. It is true that the obnoxious feature of fideicomisos was the restraint imposed upon alienation, and this doubtless was tiie impulsive cause of its inhibition.
But if a fideicomiso could be constituted without this feature and yet be such as is legitimately embraced under the term as employed in the law, it would be likewise inhibited, as the prohibition is against fideicomisos without exception.
But does the bequest in this case confer full power of alienation upon Alexander, the fiduciary heir? Certainly not, as he is not authorized to dispose of it by will. A characteristic of fideicomisary substitutions is that they wrest property from the ordinary course of descent from tiie first taker, and this by virtue of a trust that he will restore the property to another who may not be bis heir. This is a trait of the bequest in this case. The property is wrested from the, heirs of Alexander, and upon and by virtue of a trust it is to be restored to the defendant; and the obligation to restore the undisposed portion is as potential to the extent'of that portion as would be the injunction to restore all to the extent of the whole; and the obligation in either case is known and characterized in the laws as they then existed as & fideicomiso. The donation in tiie case of Ducloslange v. Ross (3 Annual R., 432) is similar in its terms to tiie bequest in this will. The donation in the case cited was made by an act inter vivos, and the land was given on the condition that in case (he legatee should die without posterity and without having disposed of tiie land it should belong to a third person. This was hold to have created a fidei-commissum, and the bequest was therefore void. The learned chief justice, in his opinion, after citing Domat for a definition of a fidei-commissum, says: “The charge da rendre appears to he tiie distinctive characteristic of si fidei-commissum. (5 Touilier. 2S.) Conditional fidei-commissa are classed byTonllier as one of the principal kinds. [Vide, also, Institutes of Justinian, by Ferriorc, lib. 2d, tit. 23, quoest. 2.) That known under the name of de eo quod supererii *23 closely resembles tbe clause under consideration. Tlie charge was to return to a third person what remained oí the property at the decease of the heir or legatee.” This class of conditional fidei-commissa does not more closely resemble the donation in the case cited than it does the bequest in controversy.
Upon the whole, it seems clear that the bequest in favor of the defendant is a fideicomiso, and consequently void under the law.
It may be said that bequests of this character have, under the Napoleon, Code, been supported. I have not access to that code, nor to the authors who have illustrated the subject with reference to its provisions. In the opinion just cited it is said that substitutions by article 800 are, in general terms, prohibited, with several exceptions, and that fidei-commissa ar.e not prohibited. There is a striking contrast between this modified reform and the sweeping force of Spanish legislation extinguishing existing and prohibiting future fidei-comisos. And the comments of learned jurists with reference to that code would afford, perhaps, but little aid in determining the precise question at issue.
It is unnecessary to consider at length the question raised as to the construction of tlie Ordinance of the Consultation adopting- the Code of Louisiana, to a certain extent, in matters of probate. This has not in practice been held to extend further than to the procedure in the Courts of Probate, leaving the power of testamentary disposition and the rights of heirs under wills and intestate successions to be determined under the laws of Spain and Mexico then in force. Had this disposition or the power of the testator, Vicente Gortario, been under the control of the Civil Code of Louisiana, the bequest would have been void, not only as to the defendant, but also as to Alexander, the instituted legatee. By article 1507, such a disposition as that contained in this will is declared null, not only as it regards the third person or the fideicommissary heir, but also with regard to the donee, the instituted heir or legatee.
Tlie laws of Spain are not so comprehensive. Tlie clause containing such a bequest is annulled only so far as it operates in favor of the fideicomissary heir, and so far as it attempts to control the disposition of the property after' it has been enjoyed by the first taker. The whole estate, the entire interest, vested, therefore, in the fiduciary heir, Alexander, and consequently tlie plaintiff, as his testamentary heir, is entitled to recover.
The object of the discussion in tills opinion is to determine whether the bequest could be properly classed as a fideicomiso, and not to ascertain all the possible eases which may be included in or exempted from this class of entail-ments. ou a fair construction of the term, with due regard to the object of tiie prohibition. The term is unquestionably quite comprehensive, as we have seen in the quotation from Sala. The editor declares iiis opinion that a request to the instituted or fiduciary heir that he would not make a will is a fideicomiso, as it is equivalent to a bequest in favor of the next of kin of the heir, and consequently interferes with his power of testamentary disposition, and that such bequest is comprehended within tlie prohibitions respecting entailments, (vin-culaciones.)
I shall refer but very briefly to the provision of the Constitution of the Republic respecting perpetuities and entailments, and this, not for the purpose of construing the terms, but of suggesting tlie difficulties incident to their interpretation. It must be remembered that at the adoption of this Constitution tlie laws of Spain were the common law of the land. Now, if we explore the jurisprudence of Spain and Mexico to ascertain the meaning which must be affixed to those terms, we shall find that tiie prohibitions of the Constitution are but a repetition of the inhibitions against every species of restriction on tbe transferability of property as contained in the decrees which we have already examined. If we look to the laws of England and to the usual significa *24 tion of tile terms as understood and applied in that system, the range and extent of these prohibitions will be very much limited. It is not necessary to the decision of this ease that a definite construction be given to the language employed. This cafi be done when the question is fairly presented and is elaborated in the argument of counsel. If the terms of the Constitution be construed in the sense in which they would be understood by a Spanish jurist, then the prohibitions against restraints on the disposition of property will have been continued long after our former system of laws was swept out of existence.
Note 8. — Bufford v. Holliman, 10 T., 560.
It is ordered, adjudged, and decreed that the judgment of the District Court be reversed; and the court here proceeding to render such judgment as should have been rendered in the court below, it is ordered, adjudged, and decreed, that the appellant do have and recover from the appellees the premises described in the plaintiff’s petition, and that there be issued to her a writ of possession, and that she do have and recover from the appellees all the costs in this behalf expended.
Judgment reversed.